# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

STATE OF DELAWARE,                     )
                                       )
            Plaintiff,                 )
                                       )
                                       )
                                       )
    v.                                 )    Cr. ID. No.  1212003086A
                                       )
                                       )
DEWAYNE MCNAIR,                        )
                                       )
            Defendant.                 )

Submitted:  July 6, 2019
Decided: October 29, 2019

## COMMISSIONER'S REPORT AND RECOMMENDATION THAT DEFENDANT'S MOTION FOR POSTCONVICTION RELIEF SHOULD BE DENIED

John Taylor, Esquire, Deputy Attorney General, Department of Justice, Wilmington, Delaware, Attorney for the State.

Christopher S. Koyste, Esquire, Attorney for Defendant Dewayne McNair.

PARKER, Commissioner

This 29th day of October, 2019, upon consideration of Defendant's Motion for Postconviction Relief, it appears to the Court as follows:

## BACKGROUND AND PROCEDURAL HISTORY

On January 22, 2013, Defendant Dewayne McNair was indicted on the charges of Drug Dealing, Possession of a Firearm During the Commission of a Felony ("PFDCF"), Possession of a Deadly Weapon by a Person Prohibited ("PDWBPP"), Carrying a Concealed Deadly Weapon ("CCDW"), and Driving without a Valid License.

The PDWBPP charge was severed from the other charges for trial. The State entered a *nolle prosequi* for the charge of Driving without a Valid License on November 19, 2013.

On November 22, 2013, following a three-day Superior Court jury trial, McNair was found guilty of Drug Dealing and PFDCF. McNair was found not guilty of CCDW. On January 8, 2014, following a Superior Court jury trial, McNair was found not guilty of the severed charge of PDWBPP.

While sentencing was pending, McNair filed a motion for a new trial based on issues that came to light at the Chief Medical Examiner's Office. That motion was denied by the Superior Court on February 1, 2016.[1] On November 18, 2016, after the State's motion to declare McNair a habitual offender was granted, McNair

---

[1] *State v. McNair*, 2016 WL 424999 (Del.Super.).

1

was sentenced. McNair's prior convictions included Possession with Intent to Deliver Heroin (1998), Robbery First Degree (2001), Possession of a Firearm During Commission of a Felony (2001), Assault Second Degree (2001), Possession with Intent to Deliver Heroin (2008), CCDW (1998), and CCDW (1999).[2]

McNair was sentenced as a habitual offender to a total of 35 years of Level V incarceration, suspended after 25 years, for decreasing levels of supervision.

McNair filed a direct appeal. The Delaware Supreme Court affirmed the judgment of the Superior Court on October 2, 2017.[3]

## FACTS

The trial testimony fairly established that on December 5, 2012, McNair was driving a rental car, a gray Honda, when he was stopped by police at 8th and Spruce Street in Wilmington, Delaware. McNair was the only occupant in the car. McNair was taken into custody and his vehicle was driven back to the Wilmington Police Department. After obtaining permission to conduct an administrative search of the car, a loaded handgun was found underneath the passenger seat.[4]

---

[2] Superior Court Docket No. 25- State's Motion to Declare McNair a Habitual Offender.
[3] *McNair v. State*, 2017 WL 4390422.
[4] November 20, 2013 Trial Transcript, at pgs. 25-33.

McNair was also found to be in possession of about 6 grams of cocaine.[5] In McNair's waist band he had a clear knotted plastic sandwich bag that contained 5.38 grams of cocaine in a brick-type form and seven smaller yellow in color Ziploc baggies containing a combined total of .82 grams of cocaine. These small bags of cocaine are commonly referred to as "dime" bags.[6] The 5.38 grams of cocaine in the bag, in a brick type form, was worth about $538, and the seven bags of cocaine in the dime bags were worth about $70-80.[7] The combined worth of the cocaine was about $600.[8]

McNair was also found in possession of $231.00.[9] There was no drug paraphernalia found in the car to indicate personal use. No straws, pipes or anything else that may be used to ingest drugs were found in the car. Nor was there any indicia of drug dealing such as scales, empty baggies to package drugs, cutting agents or drug ledgers.[10]

The State's expert witness, Detective Janvier, was a detective with the Wilmington Police Department who had eighteen years of experience working

---

[5] November 21, 2013 Trial Transcript, at pgs. 47-49.
[6] November 20, 2013 Trial Transcript, at pgs. 53-55, 60; November 21, 2013 Trial Transcript, at pgs. 49-50, 90.
[7] November 21, 2013 Trial Transcript, at pgs. 89-93.
[8] November 21, 2013 Trial Transcript, at pgs. 114.
[9] November 20, 2013 Trial Transcript, at pgs. 55-56, 67.
[10] November 20, 2013 Trial Transcript, at pgs. 45-46; November 21, 2013 Trial Transcript, at pgs. 104- 107.

undercover, conducting drug purchases, and working on hundreds if not thousands of drug investigations.[11] Detective Janvier testified that McNair was in possession of the cocaine with the intent to deliver. This opinion was based on a number of factors: the packaging of the cocaine in both the break-off and individual baggies, the location where the drugs were found on McNair, the money seized, the rental vehicle, the location where McNair was in- 8th and Spruce Streets, all combined suggested possession with intent to deliver.[12]

Detective Janvier testified that typically a drug buyer for personal use buys just what they are going to use, one or a few dime bags, not $600 dollars worth of crack cocaine. Moreover, typically a drug buyer does not buy both- a break-off chunk of cocaine and bags of cocaine. A drug buyer buys one or the other, not both.[13]

Detective Janvier testified that it was not uncommon for a drug dealer to use a rental car for drug related activities. It is harder to seize a vehicle if it is not in the individual's name and it is more difficult to associate the vehicle with a particular individual if the vehicle is not owned by that individual.[14]

---

[11] November 21, 2013 Trial Transcript, at pgs. 81-95.
[12] November 21, 2013 Trial Transcript, at pgs. 95, 100-102.
[13] November 21, 2013 Trial Transcript, at pg. 114-115.
[14] November 21, 2013 Trial Transcript, at pgs. 93-94.

McNair told the police that he had just stolen the crack cocaine from an alleyway and that was why he was driving fast when he was stopped by the police.[15] McNair also told the police that he was going to take the crack cocaine and mix it with marijuana and smoke it.[16]

McNair was, however, not in possession of any marijuana.[17] McNair did not have any drug paraphernalia in his possession to indicate personal use of either marijuana and/or cocaine.[18]

McNair also told the police that the gun was not his. He said that a friend who had been in the car earlier in the day had handed the gun to him, and that after handling it, McNair had handed it back to the friend. McNair admitted to touching the gun. McNair claimed the friend must have left the gun in the car. McNair claimed that he was unaware that the firearm was still in the vehicle.[19]

McNair elected not to testify at trial.[20] The jury found McNair guilty of Drug Dealing and PFDCF and acquitted him of CCDW.

---

[15] November 20, 2013 Trial Transcript, at pgs. 61-62.
[16] November 20, 2013 Trial Transcript, at pg. 62.
[17] November 20, 2013 Trial Transcript, at pg. 62.
[18] November 20, 2013 Trial Transcript, at pg. 63.
[19] November 20, 2013 Trial Transcript, at pgs. 38-41, 63-64.
[20] November 21, 2013 Trial Transcript, at pgs. 132-134.

## RULE 61 MOTION

On December 8, 2017, McNair filed the subject Rule 61 motion and requested the appointment of counsel. The request for the appointment of counsel was granted on February 6, 2018. On August 7, 2018, counsel filed an amended motion for postconviction relief raising three claims. All three claims raised ineffective assistance of counsel contentions.

Before making a recommendation, the record was enlarged and McNair's trial counsel and appellate counsel were directed to submit their respective Affidavits responding to McNair's claims. The State submitted a response to McNair's amended motion and McNair's Rule 61 counsel filed a reply thereto.[21]

An evidentiary hearing was held on May 7, 2019. Following the evidentiary hearing, the parties were permitted to submit supplemental briefing. On June 20, 2019, McNair's Rule 61 counsel filed a supplemental submission. The State elected not to file a supplemental submission.

## MCNAIR'S RULE 61 MOTION IS WITHOUT MERIT

In the amended Rule 61 motion, McNair raises three ineffective assistance of counsel claims. McNair claims that his trial counsel (Claim One) and appellate counsel (Claim Three) were ineffective for failing to raise the insufficiency of evidence to support the conviction on the PFDCF and Drug Dealing charges.

---

[21] Super.Ct.Crim.R. 61(g).

McNair also claims that trial counsel was ineffective for failing to present favorable information contained in a TASC report of January 7, 2013 during the defense case-in-chief.

To prevail on a claim of ineffective assistance of counsel, the defendant must satisfy the two-prong standard of *Strickland v. Washington.*[22] This test requires that defendant prove that trial counsel's performance was (1) objectively unreasonable, and (2) that the defendant was prejudiced as a result.[23]

Mere allegations of ineffectiveness will not suffice; instead, a defendant must make and substantiate concrete allegations of actual prejudice.[24] Although not insurmountable, the *Strickland* standard is highly demanding and leads to a strong presumption that counsel's conduct fell within a wide range of reasonable professional assistance.[25] Moreover, there is a strong presumption that defense counsel's conduct constituted sound trial strategy.[26]

With this backdrop in mind we turn to McNair's specific claims of trial counsel's and appellate counsel's ineffectiveness.

---

[22] *Strickland v. Washington,* 466 U.S. 668 (1984).
[23] *Id.* at 694.
[24] *Younger v. State,* 580 A.2d 552, 556 (Del. 1990).
[25] *Albury v. State,* 551 A.2d 53, 59 (Del. 1988); *Salih v. State,* 2008 WL 4762323, at *1 (Del. 2008).
[26] *Strickland v. Washington,* 466 U.S. 668, 689 (1984).

## Claims One and Three- Insufficiency of Evidence

McNair claims that there was insufficient evidence to convict him on the charges of PFDCF and Drug Dealing. McNair claims therefore that his trial counsel was ineffective for failing to move for a judgment of acquittal, and his appellate counsel was ineffective for failing to raise the insufficiency of evidence on direct appeal.

When determining a claim of insufficient evidence, the court must consider the evidence and all legitimate inferences to be drawn therefrom in the light most favorable to the State.[27] Acquittal is appropriate only when the State has presented insufficient evidence to sustain a guilty verdict. The court must inquire as to whether any rational trier of fact could have found that guilt was established.[28] For the purposes of this inquiry, the court does not distinguish between direct and circumstantial evidence.[29]

---

[27] *Grayson v. State,* 2019 WL 2078342, *2 (Del.); *Marsh v. State,* 2019 WL 1982953, *3 (Del.); *Bordley v. State,* 1995 WL 466399, *1 (Del.).
[28] *Bordley v. State,* 1995 WL 466399, *1 (Del.); *Grayson v. State,* 2019 WL 2078342, *2 (Del.); *Marsh v. State,* 2019 WL 1982953, *3 (Del.).
[29] *Grayson v. State,* 2019 WL 2078342, *2 (Del.); *Marsh v. State,* 2019 WL 1982953, *3 (Del.).

The court also must recognize that it is the sole province of the fact finder, in this case the jury, to determine witness credibility, resolve conflicts in testimony and draw any inferences from the proven facts.[30]

Viewing the evidence in the light most favorable to the State, the State's evidence was sufficient to support the jury's verdict that McNair was guilty beyond a reasonable doubt of PFDCF and Drug Dealing.

The evidence indicated that McNair was stopped by police while driving a rental car. He was the only occupant in the car. He was in an area known for drug dealing. He was in possession of over 6 grams of crack cocaine worth about $600, packaged in such a way that it was prepared for sale. There was both a break-off chunk of cocaine weighing 5.38 grams and seven small individually packaged "dime" baggies, weighing a total of .82 grams. McNair acknowledged that he had handled the gun.

The additional factors cited by the State's drug expert, Detective Janvier, should also be taken into consideration. Detective Janvier opined that McNair possessed the cocaine with an intent to deliver based on the fact that he was in a rented car, in a location known for drug dealing, with $600 of cocaine packaged both in brick form and in baggies, carrying $231 in U.S. currency. McNair claims

---

[30] *Marsh v. State*, 2019 WL 1982953, *3 (Del.).

that Detective Janvier's testimony was "fraught with credibility issues". It is, however, for the jury, not McNair, to determine the credibility of witnesses.

The jury could have logically disregarded McNair's statements as self-serving as to why he was in possession of over 6 grams of crack-cocaine packaged in a way that indicated drug dealing and as to why his fingerprints would have been on the gun. The jury could have found his statement about having just stolen the drugs, and his statement about handling the gun earlier in the day, was too convenient and too uncorroborated for the jury to give it any credence.

It is, of course, not unusual for a person to give self-serving partially untrue or wholly untrue accounts as to how drugs came to be in their possession, what they intended to do with the drugs, and their knowledge of a firearm that they knew they handled when it was found in their car.

Another logical inference that could have been drawn from the evidence at trial was that the jury believed the portion of McNair's statement that he had just stolen the crack cocaine but the jury drew the logical inference that McNair must have used the gun to steal the drugs. A logical inference to be drawn is that it is highly unlikely that McNair would have stolen $600 worth of crack-cocaine by asking politely for it and much more likely that he had stolen it under the threat of deadly force.

10

The jury could have believed that McNair had just stolen the crack-cocaine from a drug dealer, which was why the crack-cocaine was packaged for drug dealing, using the gun in his possession to steal the drugs. The jury could have further believed that McNair stole the drugs with an intention to deliver and that he did not intend to use all of the stolen drugs for his personal use.

The jury acquitted McNair of the CCDW charge. The jury must have found that the firearm was not concealed or not concealed enough. This result is not logically inconsistent. For the sake of completeness, it is noted that even if the verdict was somehow inconsistent, under the rule of jury lenity, a conviction may be upheld even if it is inconsistent with another jury verdict if there is legally sufficient evidence to justify the conviction.[31]

In this case, there was legally sufficient evidence to justify the conviction. It is clear from the verdict that the jury discounted the truthfulness of McNair's statements. When viewed in the light most favorable to the State there was sufficient evidence to support the conviction of Drug Dealing and PFDCF.

A motion for judgment of acquittal, and an appellate motion for insufficiency of evidence, would not have succeeded under the facts and circumstances of this case. Where a motion for insufficiency of evidence would not have succeeded under the circumstances, counsels' failure to make such a motion

---

[31] *Morris v. State,* 2019 WL 2123563, *4 (Del.).

11

does not constitute ineffective assistance.[32] McNair's claims of ineffectiveness for failing to file such motions are without merit.

### Count Two- Failing to Present TASC Report

McNair claims that trial counsel was ineffective for not presenting the favorable information contained in the January 7, 2013 Treatment Access Center (TASC) Report prepared by Ms. Kimberle Edwards of the Delaware Health and Social Services Division of Substance Abuse and Mental Health.

McNair was arrested in this case on December 5, 2012. His defense in this case was that the large quantity of crack cocaine he had in his possession at the time of his arrest was all for his own personal use. About a month later, on January 7, 2013, he told the TASC counselor Ms. Edwards that within the last 60 days he had been using a lot of cocaine.

Specifically, Ms. Edwards' report provided:

*Mr. McNair reports* a history of marijuana use that began when he was eleven and progressed to everyday use up to his current incarceration. He states that he began drinking alcohol at the age of 18 and progressed to everyday use up to his current incarceration. Mr. McNair reports that he drinks to intoxication every time he drinks. In the last 60 days Mr. McNair reports the everyday use of Percocet and Xanax. He also states that he has been using cocaine about four times a week in the last 60 days.[33]

---

[32] *Pierce v. State,* 2009 WL 189150, *2 (Del.).
[33] TASC report dated January 7, 2013- Superior Court Docket No. 71, Appendix to McNair's Rule 61 Motion at A14 (emphasis added).

12

McNair claims that this information was clearly favorable to McNair as it would have supported his trial argument that the cocaine in his possession was for personal consumption.

The evidence at the center of this claim, that McNair told Ms. Edwards that he used a lot of cocaine the last 60 days is inadmissible hearsay. This statement constitutes inadmissible hearsay and is precluded by Delaware Rule of Evidence 801(c). It is a statement made by the Defendant, who was not testifying at trial, being offered to prove the truth of the matter asserted. This statement would be offered to establish that McNair intended to use the cocaine himself rather than sell it to others. It is hearsay.

This statement to the TASC employee may be conflicting to the statement that McNair made to the police. In his statement to the police, McNair claimed that he intended to mix the crack cocaine with marijuana. In his statement to the TASC worker, it is unclear whether McNair claimed that he intended to mix the crack cocaine with marijuana. The author of the report could not be cross-examined as to whether or not McNair's statement to her was in conflict with his statement to the police. The TASC officer had no first-hand knowledge of McNair's drug use. The report provides only what McNair told the TASC officer about his drug use.

McNair had the choice to take the witness stand and testify in which he could say he was a heavy user of cocaine. He elected not to do so. Of course testifying came with risks, both as to his prior convictions that may be admissible and his exposure to cross-examination. Having made the decision not to testify, McNair cannot seek to testify indirectly through someone else.

The evidentiary rules do not permit a person to make a self-serving statement to another individual and then admit their own statement through that other individual. Although there is an exception to the hearsay rule if the opposing party seeks to use the statement made by a party-opponent that is not the case here.[34] Here, McNair would be seeking to admit his own statement without the State having the ability to subject that statement to cross-examination.

The evidence at the center of this claim is inadmissible and therefore the failure of counsel to attempt to offer this inadmissible hearsay statement cannot form the basis of a viable ineffective assistance of counsel claim.

---

[34] Delaware Rule of Evidence 801(d)(2).

14

## CONCLUSION

There was sufficient evidence when viewed in the light most favorable to the State to support the conviction of Drug Dealing and PFDCF. McNair's ineffective assistance of counsel claims stemming from the insufficiency of the evidence to support his convictions must fail.

As to the TASC report at issue, the evidence at the center of this claim constitutes inadmissible hearsay since it was a statement made by McNair to the TASC worker being offered for the truth of the matter asserted. The failure of counsel to attempt to offer this inadmissible hearsay statement is not a sufficient basis to support an ineffective assistance of counsel claim.

For all of the foregoing reasons, McNair's Motion for Postconviction Relief should be DENIED.

**IT IS SO RECOMMENDED.**

Commissioner Lynne M. Parker

cc: Prothonotary
Ross A. Flockerzie, Esquire
Nicole M. Walker, Esquire

15